## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MASSACHUSETTS

IN RE:                                          Case No.: 21-11839

    **COLLEEN M DUNN**                      **Chapter 13**

        **Debtor(s)**

<u>MOTION FOR RELIEF FROM AUTOMATIC STAY AND RELIEF FROM CO-DEBTOR
STAY</u>

TO THE HONORABLE JANET E. BOSTWICK:

U.S. Bank National Association, not in its individual capacity but solely as trustee for the

RMAC Trust, Series 2016-CTT together with its successors and assigns ("Movant"), hereby

moves this Court pursuant to 11 U.S.C. § 362(d), for relief from the automatic stay, and pursuant

to 11 U.S.C. § 1301 for relief from the Co-Debtor stay, with respect to certain real property of

COLLEEN M DUNN ("Debtor") and DANIEL J DUNN ("Co-Debtor") ("collectively referred

to as "Debtors"). In support, Movant respectfully represents as follows:

    1.    Movant is an entity with a mailing address of Nationstar Mortgage, LLC,

Bankruptcy Department / PO Box 619096, Dallas, TX 75261-9741.

    2.    COLLEEN M DUNN and DANIEL J DUNN ("Debtors"), are individuals each

having a mailing address of 29 Nevin Rd, Weymouth, MA 02190.

    3.    Debtors are the obligor pursuant to that certain promissory note (the "Note") dated

August 29, 2006, in the original principal amount of $510,000.00.  A copy of the Note is

annexed as Exhibit A.

    4.    To secure the Note, Debtor executed in favor of, and delivered a mortgage to WMC

Mortgage Corp. (the "Mortgage", together with the Note and any other loan documents executed

in connection therewith, the "Loan Documents") dated August 29, 2006, and encumbering the

property located at 2 Stephen Hopkins Road, Harwich, MA 02645 (the "Property").  A copy of

the Mortgage is annexed as Exhibit B.

5.      There is no other collateral to secure the Note.

6.      Movant is the current holder of the Loan Documents by virtue of the assignment(s) of mortgage annexed as Exhibit C.

7.      On December 15, 2021, Debtors filed a petition under Chapter 13 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Massachusetts.

8.      The Chapter 13 Plan confirmed on May 23, 2022.

9.      As of June 21, 2024, the total amount due and owing pursuant to the Loan Documents was $851,841.12 in principal, accrued interest, late charges, miscellaneous fees, and attorneys' fee and costs.

10.     There is a pre-petition arrearage in the amount of $730,398.86 due and owing under the Loan Documents, which is detailed in Proof of Claim # 1.

11.     As of June 21, 2024, the following chart represents the post-petition arrearage owing under the Loan Documents.  This amount is exclusive of attorneys' fees, costs, and expenses in connection with this Motion.

| Number of Missed Payments | From | To | Monthly Payment Amount | Total Amounts Delinquent |
|---|---|---|---|---|
| 3 | April 1, 2024 | June 1, 2024 | $5,983.08 | $17,949.24 |
| Less partial payments (suspense balance): ($4,196.75) | | | | |

**Total:  $13,752.49**

12.     The regular monthly payment due at this time is approximately $5,983.08.

13.     The total amount of encumbrances on the Property is approximately $851,841.12. Debtors' Schedules do not list any other liens against the Property.

14.     Movant does not have knowledge of any Declaration of Homestead recorded by

Debtors on the Property at the present time.

15.    The Debtors' Schedule A/B lists a fair market value for the Property in the amount of $1,400,000.00.

16.    For purposes of this Motion only, Movant asserts that the liquidation value of the Property is approximately $1,309,066.00, calculated at the Debtor's value less a reasonable realtor's fee of 6%; Deed Tax Stamps in the amount of $6,384.00 and real estate closing costs estimated to be $550.00.

17.    Counsel for Movant certifies compliance with MLBR 9013-1(b).

18.    Movant seeks relief from the automatic stay pursuant to 11 U.S.C. §362(d)(1) for cause on the basis that the Debtors are in default of the payment obligations resulting in an arrearage owing under the Loan Documents.

19.    Movant seeks relief from the Co-debtor stay pursuant to 11 U.S.C. §1301 (c)(3) on the basis that if the Co-Debtor stay is not lifted, Movant will be irreparably harmed in that it will not be able to exercise its right and remedies with respect to the Loan Documents and specifically, foreclosure of the Mortgage.

20.    Movant is also entitled to relief pursuant to 11 U.S.C. §1301 (c)(1) on the basis that the Co-Debtor received consideration for the claim held by the Movant.

21.    Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase order, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements in support of right to seek a lift of the automatic stay and foreclose if necessary.

WHEREFORE, Movant requests that the Court:

(1) grant relief from the section 362 automatic stay, the 1301 Co-debtor and the stay imposed by Bankruptcy Rule of Procedure 4001(a)(3) for the purpose of exercising its various

non-bankruptcy rights and remedies including, without limitation:

    a.  taking possession of the Property, obtaining a deed-in-lieu of foreclosure and/or

        foreclosing the Mortgage, and

    b.  taking such action as may be necessary to evict the Debtors or any occupant from the

Property.

    (2)  order that the Trustee cease making any further distributions to the Movant.

    (3)  order such other and further relief as may be just and proper.

Dated: June 26, 2024

                */s/Richard T. Mulligan*
                Jeffrey J. Hardiman, MA Bar No. 649855
                Richard T. Mulligan, MA Bar No. 567602
                Attorney for Creditor
                BROCK & SCOTT, PLLC
                3825 Forrestgate Drive
                Winston Salem, NC 27103
                Telephone: (844) 856-6646
                Facsimile: (704) 369-0760
                NEWENGLANDBKR@brockandscott.com

<u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 13-16-1(a)</u>

The pre-filing conference <u>was</u> held in this matter. On 03/21/2024, I initiated the

13-16-1 conference with the Debtor's counsel by email.  There is no resolution at this time.


<u>/s/Richard T. Mulligan, Esq.</u>

<u>CERTIFICATE OF SERVICE</u>

The undersigned does hereby certify that the Motion for Relief from Automatic Stay and
Co-Debtor Stay and the proposed Order were served upon the following parties by causing true
and correct copies of the same to be sent via electronic notice or via first class mail postage
pre-paid, as indicated, on June 26, 2024:

Via Electronic Notice:

    Richard King
    Office of the U.S. Trustee
    USTPRegion01.BO.ECF@USDOJ.GOV

    Carolyn Bankowski
    P. O. Box 8250
    Boston, MA 02114
    Chapter 13 Trustee
    13trustee@ch13boston.com

    Thomas Benner, Esq.
    Counsel to the Debtor(s)
    tbenner@tbennerlaw.com

Via First Class Mail:

    COLLEEN M DUNN
    29 NEVIN RD
    WEYMOUTH, MA 02190

    Daniel J Dunn
    29 Nevin Rd
    Weymouth, MA 02190

    Barnstable Tax Collector
    367 Main Street
    Hyannis, MA 02601

                      /s/Richard T. Mulligan, Esq.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

IN RE:                                        Case No.: 21-11839
    COLLEEN M DUNN                          Chapter 13

      Debtor(s)

<u>ORDER</u>

This matter having come before the Court on the Motion for Relief from Automatic Stay and Co-Debtor Stay (the "Motion") filed by U.S. Bank National Association, not in its individual capacity but solely as trustee for the RMAC Trust, Series 2016-CTT together with its successors and assigns ("Movant"), and good cause having been shown, and proper notice having been given, it is hereby

ORDERED, ADJUDGED AND DECREED

(1)    that the Motion is granted; and

(2)    that Movant is granted relief from the section 362 automatic stay, the 1301 co-ebtor stay, and the stay imposed by Bankruptcy Rule of Procedure 4001(a)(3) for the purpose of exercising its rights under its agreements with the Debtor and under applicable law, including, without limitation, foreclosing the Mortgage, as defined in the Motion, encumbering the property located at 2 Stephen Hopkins Road, Harwich, Massachusetts 02645, and bringing such action, including eviction proceedings, as may be appropriate, pursuant to state and federal law; and

(3)    that the Trustee is directed to cease making any further distributions to the Movant.

So Ordered this _____.

_____
United States Bankruptcy Judge

**OFFICIAL LOCAL FORM 13**
**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

**IN RE:**                                                        **Case No.: 21-11839**
**COLLEEN M DUNN**                                      **Chapter 13**

**Debtor**

**MOTION FOR RELIEF FROM STAY - REAL ESTATE WORKSHEET**
(To be attached to Motion for Relief from Stay)

I, Donnyell Williams (Name and Title) for Nationstar Mortgage, LLC, on behalf of Rushmore Servicing as servicer for U.S. Bank National Association, not in its individual capacity but solely as trustee for the RMAC Trust, Series 2016-CTT (hereinafter, "Movant") hereby declare:

**BACKGROUND INFORMATION**

1.   (a) Date chapter 13 petition was filed (If case has been converted from Chapter 7 to Chapter 13, provide date of petition and date of conversion):

   December 15, 2021.

   (b) Address of real property which is the subject of this motion:

   2 Stephen Hopkins Road, Harwich, Massachusetts 02645.

2.   (a) Original Mortgagee's Name and Address:

   WMC Mortgage Corp.
   P.O. Box 54089, Los Angeles, CA 90054-0089

   (b) Name and Address of Current Mortgage Holder:

   U.S. Bank National Association, not in its individual capacity but solely as trustee for the RMAC Trust, Series 2016-CTT
   Nationstar – Mr. Cooper
   8950 Cypress Waters Boulevard, Coppell, Texas 75019

   (c) Name of Note Holder, if different than Mortgage Holder:

3.   Date of Mortgage: August 29, 2006.

4.   Post-Petition payment address, if different than above:

5.  The manner in which the Movant perfected its interest in the property:
    See attached Exhibits. The lien created by the Mortgage was perfected by recording of the
    Mortgage in Barnstable at #1043307.

6.  Other collateral securing the note:
    None

7.  Other liens and encumbrances affecting the property in the order of their priority: N/A

8.  Existence and Date of Recorded Homestead (if known):  N/A

## DEBT/VALUE REPRESENTATIONS

9.  Total pre-petition and post-petition indebtedness of Debtor(s) to Movant at the time of filing
    the motion: $866,171.23 as of March 14, 2024.
    (Note: this amount may not be relied on as a "payoff" quotation.)

10. (a) Movant's estimated fair market value of the real property: $1,400,000.00.

    (b) Source of estimated fair market valuation: Schedule A/B.

    (c) Liquidation value of the real property: $1,309,066.00.

## STATUS OF DEBT AS OF
## THE PETITION DATE

11. (a) Total pre-petition indebtedness of Debtor(s) to Movant as of petition filing date:
    $1,181,262.71

    (b) Amount of principal: $501,879.29.

    (c) Amount of interest: $594,819.85.

    (d) Amount of escrow (taxes and insurance): $76,418.94.

    (e) Amount of forced placed insurance expended by Movant: $0.00.

    (f) Amount of fees billed to Debtor(s) pre-petition: $8,144.63.

12. Contractual interest rate: 12.625%. (If interest rate is (or was) adjustable, please list the rate(s)
    and dates(s) the rate(s) was/were in effect on a separate sheet and attach the sheet as an
    exhibit to this form; please list the exhibit number here: ___.)

13.     Explain any additional pre-petition fees, charges or amounts charged to the account of the
        Debtor(s) and not listed above: Please see filed POC # 1.

        (If additional space is needed, list the amounts on a separate sheet and attach the sheet as an
        exhibit to this form; list the exhibit number here: __).

### AMOUNT OF ALLEGED POST-PETITION DEFAULT
### (AS OF June 21, 2024)

14.     Date last payment was received: May 15, 2024.

15.     Total number of post-petition payments due from the date of the filing of petition through
        the date of this Motion or (mm/dd/yyyy): Three (3) Payments, April 1, 2024 to June 1, 2024.

### SCHEDULE OF POST-PETITION PAYMENTS IN DEFAULT
(Do not substitute computer generated internal accountings):

| Paym't Due Date | Amt. of Paym't Due | Amt. of Paym't Rec'd | Date Paym't Rec'd | Amt. Applied to Principal | Amt. Applied to Interest | Amt. Applied to Escrow | Late Fee Charged if any | Amt Not Applied |
|---|---|---|---|---|---|---|---|---|
| 04/01/2024 | $5,983.08 | $0.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 05/01/2024 | $5,983.08 | $0.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 06/01/2024 | $5,983.08 | $0.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Totals | $17,949.24 | $0.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

16.     Amount of Movant's Attorneys' fees charged to Debtor to date for the preparation and filing
        of this Motion: $1,050.00 (attorney's fees plus $199.00 filing fee).

17.     Other Attorneys' fees charged to Debtor post-petition: $0.00.

18.     Amount of Movant's post-petition inspection fees: $0.00.

19.     Amount of Movant's post-petition appraisal/broker's price opinion: $0.00.

20.     Amount of forced placed insurance or insurance provided by the Movant post-petition: $0.00.

21.     Sum held in suspense by Movant in connection with this contract, if applicable: $4,196.74.

22.     Amount of other post-petition advances or charges (e.g. real estate taxes, insurance): $0.00.

23.     Total amount of post-petition default, including all payments, fees, and charges: $15,001.49.

24.     Amount and date of post-petition payments offered by the Debtor(s) and refused by the Movant: Amount(s);
              Date(s):

## REQUIRED ATTACHMENTS TO MOTION

Attach the following documents to this motion and indicate the exhibit number associated with the documents:

(1) Copies of documents that indicate Movant's interest in the subject property. For purposes of example only, a complete and legible copy of the promissory note or other debt instrument together with a complete and legible copy of the mortgage and any assignments in the chain from the original mortgagee to the current moving party. (Exhibits _____.)

Exhibit A, Note: Exhibit B, Mortgage: Exhibit C, Assignment(s).

(2) Copies of documents establishing proof of standing to bring this motion if different from the above. (Exhibits_____.)

(3) Copies of documents establishing that Movant's interest in the real property is perfected. For the purposes of example only, a complete and legible copy of the Financing Statement (UCC-1) filed with either the Clerk's Office or the Register of the county the property is located in. (Exhibits _____.)

See attached Exhibits.

## CERTIFICATION AND DECLARATION FOR BUSINESS RECORDS

The undersigned certifies that the information provided in this worksheet and any exhibits attached to this worksheet (other than transactional documents attached as required in paragraphs (1) through (3) above) are derived from records that (a) were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by a person with knowledge of those matters; and (b) were prepared and kept in the regular course of business.

In the event the Worksheet is not fully completed, Movant shall explain the reasons therefor and the reasonable efforts made to obtain the information.

The undersigned further certifies that copies of any transactional documents attached to this worksheet as required by paragraphs 1, 2, or 3, immediately above, are true and accurate copies of the original documents. The undersigned further certifies that the original documents are in Movant's possession, except as follows:

I/WE DECLARE UNDER THE PENALTY OF PERJURY THAT THE FOREGOING REPRESENTATIONS OF FACT ARE TRUE AND CORRECT TO THE BEST OF MY/OUR KNOWLEDGE AND BELIEF.

_Donnyell Williams_        _6/26/2024_
Signature                               Date

_Donnyell Williams_
Printed Name

Assistant Secretary
_____
Title

Nationstar Mortgage, LLC, on behalf of Rushmore Servicing as servicer for U.S. Bank National Association, not in its individual capacity but solely as trustee for the RMAC Trust, Series 2016-CTT

_____
Organization

**EXHIBIT A**

# ADJUSTABLE RATE NOTE
### (6-Month LIBOR Index - Rate Caps)
### (First Business Day of Preceding Month Lookback)

Serv #: ████████

DUNN
Loan #: ████████
MIN:

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

August 29, 2006           MILTON                              Massachusetts
[Date]                    [City]                              [State]
2 STEPHEN HOPKINS ROAD HARWICH, MA 02645

[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 510,000.00            (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **WMC MORTGAGE CORP.**

                                                                                . I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **8.990** %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st** day of each month beginning on **October 1, 2006**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **September 1, 2036**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **4828 Loop Central Drive, Houston, TX 77081-2226** or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ **4,099.91**. This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of **September, 2008**, and may change on that day every **6th** month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the six month London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal*. The most recent Index

MULTISTATE ADJUSTABLE RATE NOTE – 6-month LIBOR Index (First Business Day Lookback) – Single Family –
DOCUDPY1
DOCUDPY1.VTX 08/25/2005
Page 1 of 4

I HEREBY CERTIFY THAT THIS IS TRUE AND CORRECT COPY OF THE ORIGINAL INSTRUMENT
BY _____ 6-21-18

figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding
**Seven and One Tenth**                                              percentage point(s) ( **7.100**  %)
to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **11.990**      % or less than  **8.990**      %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One**
percentage point(s) ( **1.000**      %) from the rate of interest I have been paying for the preceding  **6**    months. My interest rate will never be greater than  **15.490** %, or less than  **8.990**  %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.  BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6.  LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.  BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of  **15**    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  **3.000**  % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**MULTISTATE ADJUSTABLE RATE NOTE – 6-month LIBOR Index (First Business Day Lookback)** – Single Family –
DOCUDPY2
DOCUDPY2.VTX  08/25/2005

CMD

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.   WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.   UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.



If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

AUG 29, 2006
- Borrower - COLLEEN M DUNN - Date -

Pay to the order of

without recourse

Andrew Jenkins, Asst. Sect.
WMC Mortgage Corp.

*[Sign Original Only]*

**MULTISTATE ADJUSTABLE RATE NOTE – 6-month LIBOR Index (First Business Day Lookback) –** Single Family –
Page 4 of 4
DOCUDPY4
DOCUDPY4.VTX   08/25/2005

Borrower Name: **DUNN, COLLEEN**
Property Address: **2 STEPHEN HOPKINS ROAD, HARWICH, MA 02645-0000**
Loan#: ▮▮▮▮▮▮    Project ID# ▮▮▮▮▮▮    Cust#: ▮▮▮▮▮▮
Ref# :▮▮▮▮▮

## ALLONGE TO NOTE

### PAY TO THE ORDER OF:

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE ONE WILLIAMS STREET REMIC
TRUST 2008-1

(without recourse)

By:

**SUTTON FUNDING LLC**

By: _____
   **Tonya Blechinger, Assistant Secretary**

MAY 13, 2009

# ALLONGE TO NOTE

LOAN NUMBER:            708857164

NOTE DATE:             AUGUST 29, 2006

LOAN AMOUNT:           $510,000.00

NAME:                  COLLEEN M DUNN

PROPERTY ADDRESS:      2 STEPHEN HOPKINS ROAD
                       HARWICH, MA 02645

ORIGINAL LENDER:       WMC MORTGAGE CORP.


PAY TO THE ORDER OF:


WITHOUT RECOURSE:

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE ONE WILLIAMS STREET REMIC TRUST
2008-1 BY NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER, ITS ATTORNEY-IN-FACT

BY: _____

CATHY GORIN
ASSISTANT SECRETARY

# EXHIBIT B



After Recording Return To:
WMC MORTGAGE CORP. – POST
CLOSING

1 RAMLAND RD

ORANGEBURG, NY 10962

Attn:    (Equity Services)

Prepared By:
DAN ROMANO

WMC MORTGAGE CORP.

3100 THORNTON AVENUE

BURBANK, CA 91504

Doc:1,043,307 09-05-2006 11:17
BARNSTABLE LAND COURT REGISTRY

[Space Above This Line For Recording Data]

## MORTGAGE

Serv #
DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections 3,
11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in
Section 16.
(A)  "Security Instrument" means this document, which is dated **August 29, 2006**       , together with
all Riders to this document.
(B)  "Borrower" is COLLEEN M DUNN AND DANIEL J DUNN

Borrower is the mortgagor under this Security Instrument.
(C)  "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this
Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and
telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D)  "Lender" is WMC MORTGAGE CORP.

Lender is a  Corporation                        organized and existing under the laws of
CALIFORNIA                      . Lender's address is   P.O. BOX 54089, LOS ANGELES,
CA 90054-0089
(E)  "Note" means the promissory note signed by Borrower and dated   **August 29, 2006**       . The Note
states that Borrower owes Lender
**Five Hundred Ten Thousand And 00/100**
Dollars (U.S. $  510,000.00   ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **September 1, 2036**    .
(F)  "Property" means the property that is described below under the heading "Transfer of Rights in
the Property."

MASSACHUSSETTS–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3022 1/01        *(page 1 of 14 pages)*
DOCUKMA1
DOCU3001.VTX  08/27/2005

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

- ☒ Adjustable Rate Rider
- ☐ Condominium Rider
- ☒ Second Home Rider
- ☐ Balloon Rider
- ☐ Planned Unit Development Rider
- ☐ Biweekly Payment Rider
- ☐ 1-4 Family Rider
- ☐ Other(s) [specify]

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the

COUNTY                               of   BARNSTABLE                                           :
[Type of Recording Jurisdiction]            [Name of Recording Jurisdiction]
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AND KNOWN AS EXHIBIT 'A'.

which currently has the address of   2 STEPHEN HOPKINS ROAD
[Street]

HARWICH                             , Massachusetts   02645       ("Property Address"):
[City]                                                 [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
    **1.   Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

    Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

    **2.   Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

MASSACHUSSETTS—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3022 1/01          *(page 3 of 14 pages)*
DOCUXMA3
DOCUXMA3.VTX   08/27/2005

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.   **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by

RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing,

any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.  **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security

MASSACHUSSETTS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3022 1/01          *(page 6 of 14 pages)*
DOCUKMA6
DOCUKMA6.VTX  08/27/2005

Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

MASSACHUSSETTS—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3022 1/01          (page 7 of 14 pages)
DOCUKMA7
DOCUKMA7.VTX   08/27/2005

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent

by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall co ntinue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or

MASSACHUSSETTS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3022 1/01    *(page 10 of 14 pages)*
DOCUKMA10
DOCUKMA, VTX   08/27/2005

(d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

MASSACHUSSETTS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3022 1/01  *(page 11 of 14 pages)*
DOCUKMA11
DOCUKMAB.VTX 08/27/2005

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, in the manner provided by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

MASSACHUSSETTS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT       Form 3022 1/01       (page 12 of 14 pages)
DOCUKMA12
DOCUKMC.VTX   06/27/2003

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security
Instrument and in any Rider executed by Borrower and recorded with it.

_____ AUG 29 2006
- Borrower - COLLEEN M DUNN - Date -

_____ 8-29-06
DANIEL J DUNN - Date -

MASSACHUSSETTS—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3022 1/01        *(page 13 of 14 pages)*
DOCUKMA13
DOCUROAD.VTX  08/27/2005

[Space Below This Line For Acknowledgment]

STATE OF _Massachusetts_

COUNTY OF _Barnstable_

§
§

On this _29th_ day of _August 2006_ before me, the undersigned notary public personally appeared

_Colleen M. Dunn and Daniel J. Dunn_

proved to me through satisfactory evidence of identification, which were _Mass license_, to
be the person(s) whose name(s)         signed on the preceding or attached document, and acknowledged to me
that         signed it voluntarily and for its stated purpose.

_____
Notary Public

My Commission Expires: 

BRIAN J. SULLIVAN
Notary Public
Commonwealth of Massachusetts
My Commission Expires
October 1, 2010

MASSACHUSSETTS—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3022 1/01      *(page 14 of 14 pages)*
DOCUKMA14
DOCUKMAX.VTX  08/27/2005

# Exhibit A - Property Description

Closing date:

Property
Address:                    2 Stephen Hopkins Road, Harwich, Massachusetts 02645

The land in Harwich, Barnstable County, Massachusetts, bounded and described as follows:

Parcel I

### LOT 5

as shown on Land Court Plan 40425-A (sheet 2)

Parcel II

An undivided one-sixth (1/6) interest in fee in the "Beach Area" as shown on Land Court Plan 40425-A (sheet 1)

Said premises are also conveyed together with the benefit of and subject to the Reservations and Appurtenant Rights, as set forth in Document No. 897621.

Said premises are also conveyed together with the benefit of and subject to all other rights, easements, privileges, restrictions and reservations of record, insofar as the same may now be in force and applicable.

Said premises known and numbered as 2 Stephen Hopkins Road, f/k/a Lot 5 Stephen Hopkins, Harwich, Massachusetts.

The Mortgagor(s) expressly reserve my / our rights of Homestead and do not wish to terminate my /our Homestead by granting the within conveyance notwithstanding my /our waiver of such homestead in paragraph 24 of the within mortgage.

For title reference, see deed dated August 12, 2004 and filed at the Barnstable County District of the Land Court as Document No. 977090 noted on Certificate of Title No. 174076.

©1986-2006 Standard Solutions, Inc. 781-324-0550

## ADJUSTABLE RATE RIDER
### (6-Month LIBOR Index - Rate Caps)
### (First Business Day of Preceding Month Lookback)

Serv ██████████

DLNN
Loan #: ████████████
MIN:

THIS ADJUSTABLE RATE RIDER is made this 29th        day of  August, 2006        ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security
Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the
Borrower's Adjustable Rate Note (the "Note") to WMC MORTGAGE CORP.

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

2 STEPHEN HOPKINS ROAD, HARWICH, MA 02645

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE
TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.**  In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A.      INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of    8.990        %. The Note provides for
changes in the interest rate and the monthly payments, as follows:

**4.      INTEREST RATE AND MONTHLY PAYMENT CHANGES**
(A)      Change Dates
The interest rate I will pay may change on the first day of September, 2008        ,
and may change on that day every  6th      month thereafter. Each date on which my interest rate
could change is called a "Change Date."

MULTISTATE ADJUSTABLE RATE RIDER 6-Month LIBOR Index (First Business Day Lookback)--Single Family--
DOCUDQ61                                        Page 1 of 3
DOCUDQ41.VTX  08/28/2005

██████████████████████████

**(B)    The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the six month London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C)    Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Seven and One Tenth** percentage point(s) ( **7.100** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D)    Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **11.990** % or less than **8.990** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One** percentage point(s) ( **1.000** %) from the rate of interest I have been paying for the preceding **6** months. My interest rate will never be greater than **15.490** %, or less than **8.990** %.

**(E)    Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)    Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which

**MULTISTATE ADJUSTABLE RATE RIDER 6-Month LIBOR Index (First Business Day Lookback)--Single Family--**
DOCUDOQ2
DOCUDQ82.VFX  08/25/2005
Page 2 of 3

███ Borrower must pay all sums secured by this Security Instrument. ███ If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_Colleen M Dunn_    AUG 29, 2006
- Borrower - COLLEEN M DUNN - Date -

_Daniel J Dunn_    8-29-06
DANIEL J. DUNN - Date -

MULTISTATE ADJUSTABLE RATE RIDER 6-Month LIBOR Index (First Business Day Lookback)--Single Family--
DOCUD063                                                    Page 3 of 3
DOCUD063.VTX  08/25/2005

# SECOND HOME RIDER

Servicing #: ▮▮▮▮▮▮▮▮

DUNN
Loan #: ▮▮▮▮▮▮▮▮
MIN:

THIS SECOND HOME RIDER is made on this 29th day of August, 2006,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security
Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower," whether there are
one or more persons undersigned) to secure Borrower's Note to WMC MORTGAGE CORP.

(the "Lender") of the same date and covering the property described in the Security Instrument (the "Property"),
which is located at:
2 STEPHEN HOPKINS ROAD, HARWICH, MA 02645

(Property Address)

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further
covenant and agree that Sections 6 and 8 of the Security Instrument are deleted and are replaced by the following:

**6. Occupancy.** Borrower shall occupy, and shall only use, the Property as Borrower's second home.
Borrower shall keep the Property available for Borrower's exclusive use and enjoyment at all times, and
shall not subject the Property to any timesharing or other shared ownership arrangement or to any rental
pool or agreement that requires Borrower either to rent the Property or give a management firm or any
other person any control over the occupancy or use of the Property.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process,
Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or
consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to
provide Lender with material information) in connection with the Loan. Material representations
include, but are not limited to, representations concerning Borrower's occupancy of the Property as
Borrower's second home.

MULTISTATE SECOND HOME RIDER- Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT       Form 3890 1/01
DOCUKSA1
DOCUKSA1.VTX  08/25/2005                                         Page 1 of 2

██████    BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this
Second Home Rider.

_Colleen M Dunn_    AUG 29 2006

- Borrower - COLLEEN M DUNN - Date -

_Daniel J Dunn_    8-29-06

DANIEL J. DUNN - Date -

MULTISTATE SECOND HOME RIDER- Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3890 1/01
DOCURSA2
DOCURSA2.VTX   08/25/2005                                          Page 2 of 2

██████████████

BARNSTABLE REGISTRY OF DEEDS

**EXHIBIT C**

Doc:1,075,398 10-19-2007 11:17
BARNSTABLE LAND COURT REGISTRY

Record and Return to:
HomEq Servicing
4837 Watt Ave, Ste.100/Mailcode:CA3501
North Highlands, CA 95660
Noriko Colston 877-867-7378

Doonan, Graves, & Longoria
Attn: Matthew Kelly
100 Cummings Center, Suite 213C
Beverly, MA 01915

## ASSIGNMENT OF MORTGAGE

Know that, for valuable consideration, Mortgage Electronic Registration Systems, Inc. as nominee for WMC Mortgage Corporation (□ASSIGNOR□), hereby sells, assigns, and transfers to Sutton Funding LLC (□ASSIGNEE□), whose mailing address is 445 Broad Hollow Road, Suite 239, Melville, NY the Assignor⯑ interest in a certain mortgage made by Colleen M. Dunn and Daniel J. Dunn to Mortgage Electronic Registration Systems, Inc. as nominee for WMC Mortgage Corporation dated August 29, 2006 and registered in the Barnstable County Registry District of the Land Court as Document No.1043307, and as noted on Certificate of Title No. 181091, describing land therein as:
Date of Transfer: August 20, 2007

### 2 Stephen Hopkins Road, Harwich, MA

Mortgage Electronic Registration Systems, Inc. as nominee for WMC Mortgage Corporation, Assignor

Dated: _10/15/2007_

By: **Noriko Colston**
Its: **Assist. Secretary**

## CORPORATE ACKNOWLEDGMENT

State of _CALIFORNIA_ )
County of _SACRAMENTO_ ) ss.

On this _15_ day of _OCTOBER_, 2007, before me, _____**J. Cook**_____, personally appeared _NORIKO COLSTON_ ,personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

Notary signature: **J. Cook**

J. COOK
COMM.
NOTARY PUBLIC-CALIFORNIA
SACRAMENTO CO.
EXP. DEC 4, 2010

Doc:1,183,075 01-25-2012 8:32
BARNSTABLE LAND COURT REGISTRY

## ASSIGNMENT OF MORTGAGE

Know all men by these presents, that Sutton Funding, LLC, with a mailing address of 445 Broad Hollow Road, Suite 239, Melville, NY, does hereby grant, bargain, sell, assign, transfer, and set over to U.S. Bank National Association as Trustee for the One Williams Street REMIC Trust 2008-1, its successors or assigns with a mailing address c/o Quantum Servicing Corporation, 6302 E. MLK Boulevard, Suite 300Tampa, Florida 33619, all interest under that certain mortgage to Mortgage Electronic Registration Systems, Inc., from Colleen M. Dunn and Daniel J. Dunn, dated 8/29/2006 and registered as Document No. 1043307 with Certificate of Title no. 181091 of the Barnstable County Registry District of the Land Court.

**In Witness Whereof,** the Assignor has duly executed this instrument this 8th day of December, 2011

Signed, Sealed and Delivered
in the Presence of:

Sutton Funding, LLC
by Ocwen Loan Servicing, LLC
its Attorney in Fact

_____
Witness        Harrison Whittaker

By _____

_____
Witness    Yamali Martinez

Clara Taborda, Contract Manager
of Ocwen Loan Servicing, LLC

STATE OF FLORIDA

COUNTY OF PALM BEACH

On this 8th day of DECEMBER, 2011, personally appeared Clara Taborda, who is known to me to be the person who executed the foregoing instrument as the Contract Manager, of the entity that executed the foregoing instrument, and acknowledged the same to be the free act and deed of said entity, before me.



Notary Public State of Florida
Krysta Sebastian
My Commission
Expires 12/20/2014

_____
Notary Public Krysta Sebastian
My Commission Expires:

Origination Information (if none, state "None")
Mortgage Loan Originator and/or Mortgage Broker's Name, Address and License No.
"None"_____

Bendett & McHugh PC
270 Farmington Ave
Suite 151
Farmington, CT 06032

Doc:1,376,606 08-16-2019 11:59

Prepared by, Recording Requested By and Return to:
SELENE FINANCE LP
9990 RICHMOND AVE., SUITE 400 SOUTH
HOUSTON, TX 77042

# ASSIGNMENT OF MORTGAGE

*FOR VALUE RECEIVED,*
ASSIGNOR: **U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR THE ONE WILLIAMS STREET REMIC TRUST 2008-1, ITS SUCCESSORS AND ASSIGNS**, whose address is C/O SELENE FINANCE LP, 9990 RICHMOND AVE, STE 400 S, Houston, TX 77042, does hereby assign and transfer to ASSIGNEE: **U.S. BANK NATIONAL ASSOCIATION NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE ON BEHALF OF OWS 2019-LT1**, whose address is C/O SELENE FINANCE LP, 9990 RICHMOND AVE, STE 400 S, HOUSTON, TX 77042, all its right, title and interest in and to the described Mortgage:
BORROWER: **COLLEEN M. DUNN AND DANIEL J. DUNN**
BENEFICIARY: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR WMC MORTGAGE CORP., ITS SUCCESSORS AND ASSIGNS**
DATED: **8/29/2006**              AMOUNT: **$510,000.00**
RECORDED: **9/5/2006** at Instrument or Document 1043307,
in the **BARNSTABLE** County Clerk's Office, State of **MASSACHUSETTS**.

Property Address: 2 STEPHEN HOPKINS ROAD, HARWICH, MASSACHUSETTS 02645

Executed this ___08/08/2019___

**U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR THE ONE WILLIAMS STREET REMIC TRUST 2008-1 BY SELENE FINANCE LP, ATTORNEY IN FACT**

By: NATASHA GUTWILLIG
Title: AUTHORIZED SIGNER

POA RECORDING: CONCURRENTLY HEREWITH

A notary public of other officer completing this certificate verified only the identity of the individual who signed the document to which this certificate is attached and not the truthfulness, accuracy, or validity of that document

## ACKNOWLEDGMENT

STATE OF TEXAS

COUNTY OF HARRIS

This instrument was acknowledged before me on *OB - 05 - 2019* by NATASHA GUTWILLIG the AUTHORIZED SIGNER of SELENE FINANCE LP, A DELAWARE LIMITED PARTNERSHIP, AS ATTORNEY IN FACT FOR U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR THE ONE WILLIAMS STREET REMIC TRUST 2008-1, on behalf of said corporation.

Notary Public in and for the State of TEXAS
Notary's Printed Name: JOSE BERRUETE
My Commission Expires: 8/8/2021



JOSE BERRUETE
Notary Public, State of Texas
Comm. Expires 08-08-2021

JOHN F. MEADE, ASSISTANT RECORDER
BARNSTABLE REGISTRY LAND COURT DISTRICT
RECEIVED & RECORDED ELECTRONICALLY

██████████

Prepared by, Recording Requested By and Return to:

Charles A. Brown & Associates, P.L.L.C.
Charles A. Brown, Attorney at Law
2316 Southmore
Pasadena, TX 77502
713-941-4928

Charles A. Brown & Associates, P.L.L.C. d/b/a DocSolution, Inc. did not prepare a title search of the property encumbered by the security instrument described below. The preparer of this document makes no representation as to the status of the title, loan history, property use or zoning regulations concerning described property herein assigned, transferred or conveyed nor any matter except the validity of the form of this instrument. Information herein was provided to preparer by Grantor/Grantee and/or their agent. No boundary survey was made at the time of this assignment, transfer or conveyance.

████████████████████

**Record 2nd**

# ASSIGNMENT OF MORTGAGE

**FOR VALUE RECEIVED**, U.S. BANK NATIONAL ASSOCIATION NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE ON BEHALF OF OWS 2019-LTI, ITS SUCCESSORS AND ASSIGNS, whose address is c/o Selene Finance, LP, 9990 Richmond Avenue, 400 South, Houston, TX 77042, does hereby assign and transfer to U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR THE RMAC TRUST, SERIES 2016-CTT forever and without recourse, whose address is 60 Livingston Avenue, EP-MN-WS3D, St. Paul, Minnesota 55107, all its right, title and interest in and to the described Mortgage, together with certain note(s) described with all interest, all liens, any rights due or to become due thereon, executed by COLLEEN M. DUNN AND DANIEL J. DUNN to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR WMC MORTGAGE CORP., ITS SUCCESSORS AND ASSIGNS for $510,000.00 dated 8/29/2006 of record on 9/5/2006 at Document Number 1,043,307, in the BARNSTABLE County Clerk's Office, State of MASSACHUSETTS.

Property Address: 2 STEPHENS HOPKINS ROAD, HARWICH, MASSACHUSETTS 2645

Executed this _08-21-20_

U.S. BANK NATIONAL ASSOCIATION NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE ON BEHALF OF OWS 2019-LTI BY: SELENE FINANCE LP, ITS ATTORNEY-IN-FACT

By: _NATASHA GUTWILLIG_
Title: AUTHORIZED SIGNATORY

Power of Attorney recorded: _9/14/2020 BK: 33252 PG: 149 #48013_

## ACKNOWLEDGMENT

STATE OF TEXAS

COUNTY OF HARRIS

Before me, the undersigned, a Notary Public on this day personally appeared NATASHA GUTWILLIG, AUTHORIZED SIGNATORY, known to me (or proved to me on the oath of _____ ), to be the person and officer whose name is subscribed to the foregoing instrument and acknowledged to me that the same was the act of the said SELENE FINANCE LP, A DELAWARE LIMITED PARTNERSHIP, ATTORNEY IN FACT FOR U.S. BANK NATIONAL ASSOCIATION NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE ON BEHALF OF OWS 2019-LT1, ITS SUCCESSORS AND ASSIGNS, a corporation, and that he/she had executed the same as the act of such corporation for the purpose and consideration therein expressed, and in the capacity therein stated.

Given under my hand and seal of office this 21 day of AUGUST, A.D. 2021.

Notary Public in and for the State of Texas
Notary's Printed Name: Jose Berruete
My Commission Expires: 8/8/2021

JOSE BERRUETE
Notary Public, State of Texas
Comm. Expires 08-08-2021
Notary ID